UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTIAN SERNA,

Plaintiff,

v.

MICHELLE KING, et al.,

Defendants.

Case No. 25-cv-01307-NW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING ALJ'S DECISION TO DENY BENEFITS**

Re: ECF No. 13

Plaintiff Christian Serna ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental social security income benefits under Title XVI of the Social Security Act. The matter is currently before the Court on Plaintiff's motion for summary judgment. Mot., ECF No. 13. Having considered the parties' briefs and the record in this case, the Court finds that the decision of the Administrative Law Judge is supported by substantial evidence in the record and is based upon proper legal standards. For the reasons set forth below, the Court AFFIRMS the ALJ's decision and DENIES Plaintiff's motion.

## I.      BACKGROUND

Plaintiff is in his early twenties and struggles with his mental health. In August 2022, Plaintiff applied for Supplemental Security Income under Title XVI of the Social Security Act. Administrative Record ("AR") 383, 385. Plaintiff's claim was initially denied on December 21, 2022, and denied upon reconsideration on April 25, 2023. AR 68, 88. On January 10, 2024, Administrative Law Judge Matilda Surh ("ALJ") held a hearing on Plaintiff's petition.

The ALJ summarized Plaintiff's testimony as follows:

> [Plaintiff] felt unable to work because of his anxiety and depression. He stated that social interaction caused panic attacks and general discomfort, but [sic] at home and in public. The claimant testified

panic attacks are triggered by any mention of sexual abuse or violence, as well as certain words or the way people come at him. He testified that during a panic attack, he feels as though he loses control of his body and will hurt himself and be unaware of what he is doing. He testified this self-harm happens about once or twice a month. The claimant testified he is taking the generic for Zoloft every day, and the medication helps on and off; he stated he had good and bad days. He testified to medication side effects of heartburn and palpitations. The claimant testified that on bad days, he is not motivated and is depressed and unable to function. He testified he can dress himself and keep his living area clean, but sometimes has difficulty preparing meals. The claimant testified his aunt comes over every other day to give him his medication (because his doctor recommended that the claimant not have access to his own medications) and help him with cleaning, grocery shopping, and doctor's appointments. The claimant testified he talks to his cousin daily through text and visits him about once a month. He testified he can handle social interactions sufficiently to go to a gas station independently and pick up snacks, but longer interactions are hard for him.

AR 25.

The ALJ issued an unfavorable decision on March 21, 2024. She agreed that Plaintiff suffered from certain impairments, namely major depressive disorder, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder. AR 20. Despite the impairments, the ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 as he did not have an "extreme limitation or two marked limitations in a broad area of functioning." AR 21. The ALJ then determined that Plaintiff had "the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with [certain] nonexertional limitations." AR 24. Specifically, the ALJ found that Plaintiff could "perform simple, repetitive tasks in a nonpublic setting," that "[h]e would do best in a non-collaborative work situation with as little teamwork as possible, and that "[h]e [wa]s capable of accepting instructions from supervisors." *Id.*

With those determinations in mind, the ALJ asked the testifying vocational expert to consider whether "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." AR 30. The vocational expert answered in the affirmative, explaining that such an individual "would be able to perform the requirements of representative occupations such as cleaner, window . . .; waxer, floor; and . . .

cleaner, wall." *Id.* Accordingly, because the ALJ found that Plaintiff was "capable of making a successful adjustment to [] work that exists in significant numbers in the national economy," the ALJ determined that Plaintiff was not disabled within the meaning used in the Social Security Act. *Id.*

Plaintiff filed a request for review of the ALJ's decision. The ALJ's decision became final on December 9, 2024, when the Appeals Council denied review of Plaintiff's claims. AR 1. Plaintiff timely sought review in this Court. ECF No. 1.

## II.    LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine, in turn, whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity;" (2) whether the claimant has a severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do his "past relevant work" ' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett*, 180 F.3d at 1098. Substantial evidence means

United States District Court
Northern District of California

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110 (internal quotation marks and citations omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch*, 400 F.3d at 679.

## III.   DISCUSSION

In this action, Plaintiff presents a single legal issue for the Court's consideration. *See* Mot. at 3, ECF No. 13. Specifically, he contends that the ALJ did not properly credit his subjective complaints, and, as a result, formulated an RFC that failed to incorporate work-related limitations consistent with the nature and intensity of Plaintiffs' disability. Plaintiff argues that the "ALJ in this matter offer[ed] no finding or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations." *Id.* at 6. Plaintiff further argues that the ALJ failed to take his inability to undertake "sustained work activity" into her analysis. *Id.* at 6.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ's findings, however, must be supported by specific, cogent reasons." *Id.* In evaluating the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 590 (9th Cir. 2009)). First, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

Second, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted). "General findings are

United States District Court
Northern District of California

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted).  The ALJ is permitted to consider a number of factors including: (1) inconsistencies in the record concerning Plaintiff's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) Plaintiff's daily activities; and (4) observations of treating and examining physicians and other third parties.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  If the ALJ supports her credibility determination with substantial evidence in the record, the Court may not "second-guess that decision."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

In response to Plaintiff's challenge to the ALJ's decision to discount Plaintiff's subjective testimony, the Commissioner points to the ALJ's consideration of (1) the conflicts between Plaintiff's testimony and the medical records; (2) Plaintiff's ability to perform certain activities of daily living; (3) Plaintiff's failure to comply with treatment; and (4) the effectiveness of Plaintiff's medication.  The Court considers each reason in turn.

### A.      Conflicts Between Plaintiff's Testimony and the Medical Records

The ALJ first considered whether Plaintiff's statements were inconsistent with the objective examinations.  *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [Plaintiff's] symptoms").  Plaintiff argues that the ALJ merely found that Plaintiff's records did not *support* the severity of Plaintiff's impairments, but he fails to acknowledge that the ALJ found that the records *conflicted* with his reported symptoms.  *See* AR at 26 ("As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the above-discussed largely normal objective medical evidence.").  The ALJ explained that Plaintiff's mental status evaluations fell into two categories: abnormal and normal. AR 26.  Plaintiff's "infrequent" abnormal evaluations mentioned various issues including grooming, maintaining eye contact, sustaining concrete thought processes, maintaining appropriate insight and judgment, among many others. AR 26.  But the ALJ afforded "generous consideration of the claimant's subjective symptoms to the maximum degree reasonably consistent

United States District Court
Northern District of California

with the findings" when formulating the RFC. *Id.* Consequently, the abnormal objective findings "are reasonably consistent with . . . the findings and functional limitations described in the [RFC]." *Id.* For example, the ALJ explained that "findings such as concrete thought process with thought blocking; concrete abstraction; and poor insight and judgment, with consideration of the claimant's anxiety and depression symptoms, as well as described difficulties understanding and following instructions due to brain fog and forgetting, are consistent with limiting the claimant to simple, repetitive tasks." *Id.*

After providing due consideration to Plaintiff's abnormal evaluations, the ALJ noted that most of Plaintiff's evaluations were generally within normal limits. *Id.* Among many other examples, the ALJ cited medical records that demonstrated Plaintiff had "average estimated intelligence; clear, coherent, linear, and goal-directed thought process; intact language; intact memory for immediate, recent, and remote events; normal ability to concentrate; attentive attention; and fair insight and judgment." *Id.* The ALJ properly considered these records in rejecting Plaintiff's testimony about the pace, persistence, and severity of his symptoms. *See, e.g.,* *Molina*, 674 F.3d at 1113 (holding the ALJ properly relied on objective clinical findings, including that she was alert and oriented, maintained good eye contact, and spoke coherently and fluently to find claimant's allegations of disabling anxiety as not credible).

While the ALJ could have been more precise in her decision regarding which specific testimony contravened which specific records, the Ninth Circuit does not require an ALJ to "perform a line-by-line exegesis of the claimant's testimony." *Lambert*, 980 F.3d at 1277. "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (quotation marks omitted). Such is the case here, not least because Plaintiff fails to offer any sections of the record showing his mental health symptoms were more limiting than the ALJ described them. Because the Court can reasonably discern the ALJ's path regarding which testimony she found unsupported by what medical evidence, the Court finds that the ALJ's discussion of Plaintiff's testimony and the medical evidence was sufficient to "allow[ ] for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)

In sum, the ALJ's adverse credibility determination was supported by specific, clear, and convincing reasons. The Court finds that the ALJ gave due consideration to Plaintiff's symptom statements given the entire record, including the medical evaluations.

### B.    Daily Living

The Court agrees with Plaintiff that the ALJ failed to provide specific and clear reasons for rejecting Plaintiff's testimony on the basis of his daily activities. If a claimant engages in daily activities that are incompatible with the severity of symptoms alleged, this can support an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). But disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1989) (quoting *Smith v. Califano*, 637 F.2d 968, 971-972 (3rd Cir. 1981) for the proposition that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). The ability to maintain some daily activities does not translate into a negative determination about credibility regarding ability to work. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). "Only if the level of activity were inconsistent with claimant's claimed limitations would these activities have any bearing on claimant's credibility." *Reddick*, 157 F.3d at 722.

After considering Plaintiff's daily activities, the ALJ opined that, because Plaintiff was able to maintain independent self-care, prepare simple meals, shop in stores for 30 minutes weekly with his father or stepmother, watch television and play video games, and begin the process of pursuing his GED, this demonstrated inconsistency with the record. AR 21. Plaintiff argues that these activities do not reflect his ability to sustain full time substantial gainful activity because his

7

activities did not require the endurance to engage in activities lasting anywhere near eight hours, much less sustain forty hours a week.  Mot. at 6.

The ALJ did not explain how Plaintiff's daily activities were transferrable to performing in the workplace when assessing Plaintiff's credibility.  The examples provided by the ALJ do not reflect an ability to complete an eight-hour workday.  Plaintiff's activities were all done on his own time, consistent with his symptom statements.  *See Garrison*, 759 F.3d at 1016 (holding that the plaintiff's daily activities, including preparing meals once or twice a day and occasionally cleaning her room, were consistent with the plaintiff's testimony and an inability to function in a workplace environment).  Plaintiff should not be penalized for participating in some "normal" life activities in the face of his mental health challenges.  *Cooper*, 815 F.2d at 561.  Accordingly, the supposed inconsistencies between Plaintiff's daily activities and his testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Plaintiff's testimony regarding his impairments.

### C.    Pursuing Recommended Treatment

The ALJ reasonably considered Plaintiff's failure to seek or follow a prescribed course of treatment when assessing Plaintiff's credibility.  20 C.F.R. § 416.929(c)(3)(iv),(v) (the ALJ considers treatment history when evaluating claimant's subjective testimony); SSR 16-3p, 2016 WL 1119029, at *9 (March 16, 2016) ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment, we may find the alleged intensity and persistence of an individual's symptoms inconsistent").  Although a claimant's failure to seek or follow prescribed medical treatment may suggest less severe or disabling impairment, the Ninth Circuit has cautioned against drawing such inferences when evaluating mental conditions. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, the ALJ observed that there was "some evidence of treatment noncompliance." AR 27.  For instance, an October 2023 note stated that Plaintiff "reports not attending therapy regularly and [having] no plans to change pattern," yet therapy was recommended.  AR 27 (citing AR 734).  Where, as here, the record does not indicate that a lack of treatment is due to resistance

to treatment stemming from a plaintiff's mental health issues, it is "reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints." *Meyers v. Berryhill*, 733 F. App'x. 914, 915-916 (9th Cir. 2018) (citing *Molina*, 674 F.3d at 1114) (quotation marks omitted)).  In other words, a claimant's unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an ALJ's adverse credibility finding unless the claimant shows good reason for the failure.  *Orn*, 495 F.3d at 638.

Typically, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  SSR 16-3p, 2016 WL 1119029, at *8-*9 (March 16, 2016).  But here Plaintiff entirely fails to address his noncompliance with treatment recommendations in his motion, and he only referenced his noncompliance on the last page of his reply.  Without any evidence or argument that Plaintiff had compelling reasons for failing to pursue or comply with treatment, the Court finds it was reasonable for the ALJ to rely on Plaintiff's noncompliance as a reason to discount his symptom claims.

### D.    Improvement with Medication

The ALJ additionally pointed to Plaintiff's improvement with treatment as a reason to discredit Plaintiff's subjective symptoms.  Specifically, The ALJ explained that Plaintiff's

> treating records generally reflect that prescribed Zoloft was helping, such that he reported improvement in depressed mood.  He generally denied excessive worrying and denied feeling depressed. Improvement is supported by concurrent largely normal findings on mental status evaluation and effective treatment . . . I also consider that the claimant testified at the hearing that his medications were not adjusted after his January 2023 hospitalization, again consistent with reasonably effective treatment on his current medication regime.

AR 27.

Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Although the ALJ's findings point to some evidence in the record that suggests Plaintiff's condition improved with treatment, the ALJ insufficiently explained how, if at all, she considered the periodic difficulties Plaintiff had with the medication. During the hearing, Plaintiff stated that his medication had not been helping "as of recently" and that he still had bad days while taking his medication. AR 42. Given these statements, and without further analysis by the ALJ, there was not a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims on this basis. *See Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016) ("[T]he ALJ must show that the treatment was capable of providing lasting relief.").

***

After considering the factors above, and because two of the factors considered were supported by substantial evidence, the Court concludes that the ALJ did not err in assessing Plaintiff's credibility. While the Court does not uphold all of the reasons the ALJ provided, it is enough that there is substantial evidence for two, namely the inconsistencies between the objective medical records and Plaintiff's testimony and Plaintiff's failure to pursue recommended treatment. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (affirming "ALJ's decision finding [plaintiff] less than fully credible [a]s valid . . . despite errors" where additional and substantial reasons existed to support the ALJ's determination). Here, the ALJ's decision to reject plaintiff's subjective symptom testimony was supported by substantial evidence; thus, the ALJ did not err in rejecting this testimony.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and AFFIRMS the ALJ's decision to deny benefits in this action.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
Noël Wise
United States District Judge

United States District Court
Northern District of California

10